IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re )<br>)<br>THORBARDIN RANCH, LLC )<br>)<br>Debtor. ) | Case No. 09-21157<br>Chapter 11 |

FILED

10:13 am, 9/27/11

Tim J. Ellis
Clerk of Court

### OPINION ON THE UNITED STATES TRUSTEE'S AND PINNACLE BANK'S MOTIONS TO DISMISS

On June 15, 2011, this matter came before the court for an evidentiary hearing on the United States Trustee's Motion to Dismiss this Chapter 11 Case Pursuant to 11 U.S.C. §1112(b). The court heard, simultaneously, the Motion to Dismiss filed by Pinnacle Bank ("Pinnacle"); the joinders filed by First National Bank & Trust ("First National") and Security State Bank ("Security State"); and Thorbardin Ranch, LLC's ("Debtor") objection. The parties were represented as stated on the record. The court having reviewed the file, testimony and evidence is prepared to rule.

**Jurisdiction**

The court has jurisdiction under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §157(b). The motions are brought under 11 U.S.C. §1112 (b). [1]

**Facts**

The Debtor filed its chapter 11 bankruptcy petition on November 13, 2009. The court denied confirmation of Debtor's Amended Plan on May 23, 2011. Debtor has not filed a proposed amended plan since that order was entered.

---

[1] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

The Debtor's assets include, in part: (a) a ranch in Johnson County, Wyoming ("Buffalo property"). The Debtor listed the property on Schedule A with a value in the amount of $6,600,000.00 but has testified that it is listed for sale for the price of $8,000,000.00; (b) real property in Albany County listed on Schedule A with a value in the amount of $6,000,000.00; (c) livestock, valued by the Debtor on its May 2011 monthly operating report, in the amount of $1,606,000.00.

Pinnacle filed a proof of claim, in the amount of $2,644,629.99 as of the date the bankruptcy case was filed, secured by real property in Albany County, Wyoming. The interest rate on the loan is six percent (6%). Mr. Gil McEndree, ("McEndree") branch president for the Worland bank, testified that the principal and interest due as of the date of the hearing was $2,891,956.68. Pinnacle Bank is over-secured.

First National filed a proof of claim asserting a claim, in the amount of $4,398,104,15 as of the date the bankruptcy case was filed, secured by the Buffalo property and the Debtor's livestock. The interest rates on the loans are 7.5% and 3.9%, respectively. The loans are cross-collateralized and over-secured.

Security State filed a proof of claim asserting a claim in the amount of $193,173.26 as of the date the bankruptcy case was filed, secured by a second mortgage on the real property located in Albany County, Wyoming. The interest rate on the loan is 6.25%. Mr. Steve Cady, branch president, testified that the interest that had accrued on the loan since the date of filing to the date of the hearing was in an amount of over

$20,000.00 and penalties in the amount of $1,100.00. Mr. Cady testified that the loan is over-secured.

Maureen Vallencourt ("Mrs. Vallencourt"), the Debtor's finance manager, is responsible for the bookkeeping and prepares the monthly operating reports. Mrs. Vallencourt testified that monthly operating reports show the accumulated net loss of $195,387.91 since the bankruptcy was filed. This loss did not include the accruing interest on over-secured loans. Mrs. Vallencourt testified that the Vallencourts began paying themselves the amount of $6,000 a month in January 2011, for compensation for services from the Debtor. Mrs. Vallencourt also testified that Debtor did not have an amended plan pending at the time of the hearing.

**Discussion**

The court shall convert a chapter 11 case to a chapter 7 case, absent unusual circumstances specifically identified by the court that establish that the requested conversion is not in the best interest of creditors and the estate, if the movant establishes cause.[2] The Bankruptcy Code includes a non-exhaustive list of actions that defines "cause" for the purpose of dismissal under this section.[3] Specifically, the UST, Pinnacle, First National and Security State each allege that cause exists to dismiss for a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable

---

[2] § 1112(b)(1).

[3] § 1112(b)(4).

likelihood of rehabilitation."[4] Additionally, First National alleges that cause exists under §1112(b)(4)(E) for "failure to comply with an order of the court."[5] Security State also alleges cause exists as the Debtor has failed to "file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court."[6] The burden is on the movants to prove §1112(b) "cause" by a preponderance of the evidence.[7]

<u>Substantial or continuing loss to or diminution of the estate</u>

The court, in determining continuing loss to or diminution of the estate, considers whether the Debtor has suffered or continues to experience a negative cash flow, or declining asset values. Factors for the court to consider include whether the Debtor experienced a negative cash flow for a period of months and the continued accrual of administrative expenses, including professional fees that are diminishing the estate; whether the debtor will be able to stem its losses and place the business enterprise back on solid financial footing within a reasonable amount of time. A useful indicator is whether the debtor will be in a position to have a plan of reorganization confirmed.

The Debtor's operating reports show that the Debtor continues to sustain an continuing loss to the estate. The May 2011 operating report shows an accumulated loss of over $195,000.00 since the bankruptcy was filed in November 2009. These losses

---

[4] § 1112 (b)(4)(A).

[5] §1112(b)(4)(E).

[6] § 1112(b)(4)(J).

[7] *In re Woodbrook Assocs.*, 19F.3d 312, 317 (7th Cir. 1994).

were incurred while the Debtor has not made payments on its real property and equipment loans. The operating report also did not include the accumulating interest on the over-secured claims. Mrs. Vallencourt testified that the reported amount does not take into account the increase of the debtor's assets with the purchase of cattle. However, the subsequent testimony from Mr. Vallencourt, indicated that the Debtor currently had approximately the same number of cattle as when the bankruptcy was filed. It appears the cattle purchased were to replace a diminishing asset to return the cattle inventory to its earlier number.

The court also takes into consideration the accrual of interest on the secured claims in determining the continuing diminution of the estate's assets. Mr. McEndree, president of Pinnacle testified that its loan accrues interest at the rate of 6%. Mr. Mills, testified that the interest rates for the term loan and the line of credit loan with First National are 3.25 % and 7.5%, respectively, with a default interest rate of 21%. Mr. Mills testified that the term loan was in default when the Debtor filed for bankruptcy protection and that is the interest rate that should apply. Mr. Mills calculated, using the default rate of interest, that the principal, interest and fees owing to First National as of May 9, 2011 was the amount of $5,855,344.83. Mr. Cady of Security State, testified that the interest rate of its loan was 6.25%. Since the Debtor had filed its bankruptcy, interest in the amount of $20,938.57 and penalties of $1,100.00 had accrued on the Security State loan. During this time the Debtor continued its change from a specialty type of cattle to black Angus,

paid the principals expenses and a monthly wage of $3,000.00 each; and continue to contend that the sale of the real property will allow the Debtor to pay its secured creditors and provide for a successful reorganization. The Debtor does not have the Albany County property listed with a real estate agency, nor has it had any interest by potential buyers of the Buffalo property.

The Debtor proposes that a deadline be set to allow the Debtor to sell the Buffalo property of one-year to effectuate the funding of a plan. The court is concerned, as this was the same testimony that was proffered to the court at earlier hearings in this case. However, in the time since the case has been filed, the Debtor has listed the Buffalo property for sale at a price of $8,000,000.00, with no interest shown to date. The Debtor uses different values for its real property. It listed the Buffalo property on Schedule A, with a value of $6,606,000.00. Whereas the Vallencourts testified that it is listed for sale for $8,000,000.00. The Vallencourts also testified that no interest has been expressed in the real property since the bankruptcy was filed. The movants, the UST and Pinnacle Bank, and joinder creditors continue to express their concerns that interest continues to accrue on the loans and the estate shows a continuing net negative loss with no viable plan in effect, and no viable method proposed to reverse this continuing loss.

<u>Absence of a reasonable likelihood of rehabilitation</u>

The court finds the testimony and analysis of the three banker witnesses to be credible. Each testified, that based upon his individual analysis the Debtor cannot

propose a viable plan. Each had used the Debtor's financial records and projections and calculating all the Debtor's claims determined that the Debtor's projections were unrealistically based upon a high cattle price and hopes of a pending sale of real property. Even with the sale of real property, Mr. Gil and Mr. Cady, in their professional opinions testified that they did not believe that the Debtor could propose a confirmable plan. Mr. Gill also expressed his concerns that the real property in Buffalo was not worth the value the Debtors attributed to it. First National relies upon an appraisal completed in April 2010 , which valued the real property at $8,000,000.00. However, the recent history of no interested buyers and "softening" of the real estate market indicates the property is over-priced.

Mr. Mills, who is experienced in banking and ranching, testified that the Debtor attributed an unrealistic debt loan to each cow. He testified the a cow generally contributes $1,600.00 a year of income over a period of seven years. Whereas, the Debtor's projections indicate that each cow will contribute $11,000.00 a year for 35 years.

The court, taking into consideration the analysis of the witnesses and the Debtor's unsubstantiated and unrealistic projections finds that the movants have established that it is unlikely that the Debtor will provide a confirmable plan in a reasonable time. It appears the Debtor is delaying the inevitable with hopes that the real estate market will improve so that it might sell the Buffalo property at the higher value. However, there is

not any evidence to support this.

The court having found that the movants met the burden in establishing that there is a continuing diminution of the estate and no reasonable likelihood that a confirmable plan can be filed, finds the case should be dismissed.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this 27 day of September, 2011

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Daniel Morse
    Stephen Winship
    Janet Tyler
    David Clark
    Eric Nelson/Tim Stubson